UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| DYRON D.P.R.,[1] <br><br> Petitioner, <br><br> v. <br><br> WARDEN OF THE CALIFORNIA CITY CORRECTIONAL CENTER, et al., <br><br> Respondents. | No. 2:26-cv-01224-TLN-EFB <br><br> A# 201-915-467 <br><br><br> **ORDER** |

This matter is before the Court on *pro se* Petitioner Dyron D.P.R.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an omnibus response and motion to dismiss. (ECF No. 6.) Petitioner replied. (ECF No. 7.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

---

[1]    The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to the constitutionality of his civil immigration detention.  In April 2019, Petitioner entered the United States to seek asylum. (ECF No. 1 at 4.)  Initially, immigration authorities detained Petitioner and instituted expedited removal proceedings.  (*Id.* at 30, 32.)  During the proceedings, an asylum officer found Petitioner had a credible fear of political persecution in his home country and he was then placed in standard removal proceedings and given an opportunity to pursue his asylum claim.  (*Id.* at 38–48; ECF No. 6-1 at 2.)  In June 2019, Petitioner was released on an immigration bond.  (ECF No. 6-2.)

Over the last seven years, Petitioner has established a life in the United States.  (ECF No. 1 at 2.)  Petitioner applied for asylum (*id.* at 17-29, 108); he obtained government authorization to work (*id.* at 98); and he started his own cleaning business (*id.* at 2, 70–74).  Petitioner has submitted letters of reference from family and community members, an employer, and his banker, attesting to his character and integrity.  (*Id.* at 75–86.)

Petitioner's immigration proceedings are still pending and he is not subject to any order of removal.  (*Id.* at 15–16.)  Petitioner was convicted of battery arising from an incident in 2023.[2] (*Id.* at 95.)  Petitioner avers he has served his sentence, his case is closed, and he is not subject to supervision.  (*Id.* at 11.)  The parties do not identify any other criminal history.  Further, Respondents do not claim that Petitioner is a danger to the community, nor a flight risk.  (*See generally* ECF No. 6.)  There is also no evidence in the record that Petitioner's immigration bond was terminated or revoked.

Yet, on February 25, 2026, immigration authorities detained Petitioner without notice.

---

[2]    Respondents' counsel is reminded of their duty under Federal Rule of Civil Procedure 11(b)(3) to conduct a reasonable inquiry into the facts and to ensure evidentiary support exists for factual contentions prior to filing.  Moreover, Respondents' counsel is reminded of their duty of candor to this Court under rules of professional conduct.  *See, e.g.*, Cal. R. Prof. Conduct 3.3(a)(1) (A lawyer shall not "knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.").  In Respondents' brief, counsel wrote that Petitioner's criminal case was ongoing (when it resolved in 2025) and failed to disclose that his charges had been dropped to a single battery count.  Petitioner included dispositional records in his filing (ECF No. 1 at 95), which indicates to this Court that Respondents' counsel filed their brief without performing a reasonable inquiry into the facts and also failed to review the record in this case.

(ECF Nos. 1 at 4–5; 6-1 at 2.)  Petitioner asserts Florida Highway Patrol conducted a pretextual traffic stop for purportedly improperly tinted windows.  (ECF No. 1 at 11.)   After inspection, Petitioner asserts that officers confirmed his window tint was acceptable, but officers then contacted immigration authorities to detain Petitioner.  (*Id.*; ECF No. 6-1 at 2.)

Petitioner has now been detained nearly four months.  In that time, Respondents have not provided Petitioner a bond hearing or any custody determination hearing.  (ECF No. 1 at 5.)  Petitioner suffers from migraines and hypertension which are exacerbated by the conditions of his confinement.  (*Id*. at 5.)  Petitioner alleges he has not been afforded fair procedures and challenges the lawfulness of his detention.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III.    ANALYSIS

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.  (ECF No. 1 at 7–8.)  Respondents contend Petitioner does not possess a right to freedom from immigration detention and he is mandatorily detained under 8 U.S.C. § 1225(b)(1).  (ECF No. 6 at 2.)  The Court addresses each claim in turn.

///

3

A.    Immigration and Nationality Act

Petitioner alleges his detention is governed by 8 U.S.C. § 1226(a) and he is entitled to a prompt and individualized bond hearing.  (ECF No. 1 at 6–7.)  Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1).  (ECF No. 6 at 1.)

The INA generally provides two administrative processes for the removal of noncitizens deemed inadmissible: expedited removal proceedings and standard removal proceedings.  The expedited removal process is governed by § 1225.[3]  The standard removal process, "section 240 proceedings," is codified at § 1229a.  *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1157 (S.D. Cal. 2025).  For those in standard removal, apprehension and detention during the pendency of those proceedings is governed by § 1226(a) and (c).  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).

Under § 1226(a), the government has broad discretion whether to release or detain the individual.  *Id.*  Section 1226(a) also provides "extensive procedural protections" including several layers of review of the initial custody determination, "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."  *Id.* at 1202.  Additionally, § 1226(a) authorizes discretionary detention upon issuance of an administrative warrant.  *See Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a).") (emphasis in original). Though not relevant here, § 1226(c) "carves out a statutory category of [noncitizens] who may *not* be released under § 1226(a)" based on specific criminal history and related considerations.  *Jennings*, 583 U.S. at 289 (emphasis in original).

Here, Respondents' own brief identifies that Petitioner is subject to standard removal proceedings, rather than expedited removal proceedings.  (ECF No. 6 at 2 ("[I]n 2019 [U.S.

---

[3]    Unless otherwise noted, citations to statute refer to sections of Title 8 of the United States Code.

4

Border Patrol] placed Petitioner in expedited removal proceedings . . . [The U.S. Department of Homeland Security] subsequently . . . placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a."). Because DHS issued Petitioner a Notice to Appear and instituted standard removal proceedings against him, Petitioner's detention is now governed by § 1226(a) rather than § 1225(b)(1). *See Rodriguez Diaz v. Garland*, 53 F.4th at 1196. These two statutes cannot be applied simultaneously. *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025).

Respondents' position that Petitioner is detained under § 1225(b)(1) contradicts their own brief and records and appears to be a justification adopted post hoc and raised for the first time in litigation. *See Jimenez v. FCI Berlin, Warden*, 799 F. Supp. 3d 59, 67 (D.N.H. 2025) (similarly finding petitioner subject to § 1226(a) where their order of release on recognizance and warrant were issued pursuant to § 1226(a)); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) (declining to credit Respondent's post hoc rationalization for petitioner's detention). Because "Respondents cannot detain Petitioner in connection with expedited removal proceedings that do not exist," Petitioner's detention under § 1225(b)(1) is improper. *Aguilar v. Bondi*, No. 5:25-CV-01453-JKP, 2025 WL 3471417, at *6 n.3 (W.D. Tex. Nov. 26, 2025).

Even if Respondents intended to cite to § 1225(b)**(2)**, the outcome does not change. Section 1225(b)(2) is still an expedited removal process. Moreover, the vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States. *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases). Respondents offer no new arguments or facts justifying reconsideration in this case.

For these reasons, and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not subject to mandatory detention under § 1225(b). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision including a bond hearing, at minimum. Yet, Respondents have not provided Petitioner any such bond or

custody hearing in nearly four months of detention.  Moreover, there is no evidence in the record that Respondents had a valid warrant for Petitioner's arrest as required by § 1226(a).[4]  *Choggllo Chafla v. Scott*, 804 F. Supp. 3d at 264.  Therefore, Respondents have violated § 1226(a).

### B.    Fifth Amendment Procedural Due Process

Petitioner also alleges his detention violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 8.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### i.    Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five

---

[4]    The Court ordered Respondents to file, *inter alia*, "any custody warrants or notices" for Petitioner.  (ECF No. 4.)  Respondents did not provide any warrant for Petitioner's arrest as issue. (*See* ECF No. 6.)

years strengthened petitioner's liberty interest).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause. Petitioner has lived in the United States for approximately seven years, during which he built a life, established deep roots in his community, and started a business. Even if he is subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693.

In opposition, Respondents contend that Petitioner does not possess a right to freedom from immigration detention in any form other than the form provided by Congress and relies on § 1225(b) as the authority provided by Congress. (ECF No. 6 at 2 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953), *reaffirmed in DHS v. Thuraissigiam*, 591 U.S. 103, 139 (2020).). First, the Court has already found above that Petitioner is subject to § 1226(a) rather than § 1225(b), so even accepting Respondents argument as true, Petitioner's liberty interest is not diminished by a discretionary authority to detain Petitioner. Second, "*Thuraissigiam*'s discussion of due process is necessarily constrained to challenges to admissibility to the United States" and "[t]he Court answered no broader question." *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023). *Thuraissigiam* "does not foreclose . . . due process claims which seek to vindicate a right to a bond hearing with certain procedural protections." *Id.* at 1172. Moreover, even if Petitioner is removable, or his liberty is revocable, he is still entitled to safeguards throughout those processes. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693; *Rico-Tapia*, 2025 WL 2950089, at *8.

With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

### ii. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any,

of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for nearly four months without any opportunity to be heard as to the justification of his detention, away from his community, and to the detriment of his business. Moreover, Petitioner's migraines and hypertension are likely exacerbated by his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to a final order of removal; his immigration proceedings are still pending. Petitioner was detained without notice, a warrant, nor is there any evidence that his immigration bond was revoked or terminated. Petitioner has one criminal conviction for battery stemming from an incident in 2023, which was resolved in 2025, but Respondents have not argued that this conviction has any bearing on his detention. Nor do they argue that Petitioner is a danger to the public or a flight risk. Therefore, the risk that he is being detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide

Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondent and are indeed the very processes required under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. Any burden associated with the provision of these processes does not outweigh Petitioner's substantial liberty interest and the risk of erroneous deprivation.

The Court finds that, under these circumstances, Respondents were required to provide notice and a pre-deprivation hearing before a neutral decisionmaker. The U.S. Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case." (*See generally* ECF No. 6.)

Yet, Petitioner was not provided with any warrant for arrest or notice of bond revocation, nor was he given a pre- or post-deprivation hearing as to the justification of his detention over nearly four months. Therefore, Respondents have violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.   CONCLUSION**[5]

Respondents detained Petitioner in violation of the Fifth Amendment and federal law. Accordingly, IT IS HEREBY ORDERED:

1. Respondents' Motion to Dismiss (ECF No. 6) is DENIED.

---

[5]   Respondents request this ruling be held in abeyance until the Ninth Circuit rules on *Rodriguez Vasquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025), which may have precedential effect on one of the issues in case. (ECF No. 6 at 2.) The Court declines to do so. As this Court has said previously, it will not delay issuing relief on the prospective chance a pending appeal could change the outcome of one claim.

2. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

3. Respondents must IMMEDIATELY RELEASE Petitioner Dyron D.P.R. (A# 201-915-467) from custody.  At the time of release, Respondents must **provide a copy of this Order to Petitioner** and return all of Petitioner's documents and possessions.

4. Respondents must file a **notice of compliance** with this Order by **May 14, 2026.**

5. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

6. The Clerk is directed to serve the **California City Corrections Center** with a copy of this Order.

7. The Clerk of Court shall enter judgment in favor of Petitioner and close this case.

   IT IS SO ORDERED.

Date: May 11, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE